IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-50712
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GREGORY ALAN KUBAN,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Western District of Texas
_____

August 29, 1996

Before REAVLEY, GARWOOD and DeMOSS, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Gregory Kuban (Kuban), a convicted felon, pleaded guilty to a charge of knowingly possessing firearms that had been shipped or transported in interstate commerce, in violation of 18 U.S.C. § 922(g)(1). Prior to entering his plea, Kuban filed a motion to dismiss the indictment, challenging the constitutionality of section 922(g)(1). Kuban's plea was conditioned on his right to appeal the district court's denial of this motion to dismiss the indictment. On appeal, Kuban challenges both the constitutionality of section 922(g)(1) and the district court's interpretation and application of the guidelines in computing his sentence.

**Facts and Proceedings Below**

On the evening of July 1, 1994, Kuban went searching for his fourteen-year-old daughter, Jennifer Kuban. During his search, he came upon a friend of his daughter, sixteen-year-old Kenan Ozen (Ozen), parked in his car with Justin Neelley (Neelley). Kuban pulled his car alongside that of Ozen, pointed a 9mm pistol at Ozen's head, cocked the hammer and demanded that Ozen tell him the whereabouts of his daughter. Kuban was acquainted with Ozen as Ozen had previously worked for him, providing maintenance at Kuban's automobile detail and window tinting business. Directing his litany of threats and questions at Ozen, Kuban apparently left Neelley alone. Ozen and Neelley accordingly led Kuban to his daughter.

When they arrived at the residence where Jennifer Kuban was staying, Ozen and Neelley went inside and told the occupants what had happened. They locked the door and stayed in the house while Kuban sat outside in his car, honking his horn and yelling. Fearing that Kuban would eventually attempt to enter the residence, the occupants called the police, but Kuban departed before the police arrived.

After obtaining a warrant for Kuban's arrest, law enforcement officers proceeded to Kuban's residence and observed him get into his car as if to depart. As five officers ran to Kuban's car, Kuban was seen leaning into the passenger area of his vehicle. One of the officers reported that he then saw a handgun on the front passenger floor. Kuban was instructed to raise his hands and exit

2

the vehicle; when he refused to do so, Kuban was forcibly removed from his car and handcuffed. A subsequent investigation of the car resulted in the recovery of a loaded Browning 9mm pistol (manufactured in Belgium) from the front passenger seat, a loaded Ruger Redhawk .41 caliber magnum pistol (manufactured in Connecticut) from the front passenger floor area, and a small quantity of marihuana on the passenger seat.[1] Kuban was arrested for aggravated assault with a deadly weapon, possession of a firearm by a felon[2], and possession of marihuana. Kuban made bond on these state charges and was released.

In Texas state court, Kuban was charged with aggravated assault with a deadly weapon, in violation of Texas Penal Code §§ 22.01(a)(2), 22.02(a)(2), and felon in possession of a firearm, in violation of Texas Penal Code § 46.04(a)(1). On November 11, 1994, a federal indictment against Kuban was also returned, charging him with felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Kuban filed a motion to dismiss the federal indictment, arguing that section 922(g)(1) is an unconstitutional exercise of the government's power to regulate commerce. The district court

---

[1]After impounding Kuban's vehicle, an inventory of the car additionally revealed a bag containing seven syringes and two spoons, a coffee can containing approximately one-half ounce of marihuana, zigzag rolling papers and several small plastic bags.

[2]Kuban had been previously convicted of three felony offenses: aggravated assault, retaliation, and possession of marihuana in an aggravated quantity.

overruled this motion, and Kuban subsequently entered a conditional

guilty plea, reserving his right to appeal the district court's adverse determination of his motion to dismiss.

The presentence investigation report (PSR) recommended: a four-level increase to Kuban's base offense level for Kuban's "use[] or possess[ion of] any firearm or ammunition in connection with another felony offense", pursuant to U.S.S.G. § 2K2.1(b)(5)[3]; a two-level "vulnerable victim" increase pursuant to U.S.S.G. § 3A1.1; and a three-level downward departure in recognition of Kuban's acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a). Kuban objected to the PSR's recommendations for increases in offense level, but the district court overruled his objections and adopted the recommendations. The district court sentenced Kuban to 108 months imprisonment, a three-year term of supervised release, a fine of $12,500, and a special assessment of $50. Kuban appeals.

**Discussion**

I. Constitutionality of 18 U.S.C. § 922(g)(1)

Kuban's challenges to the constitutionality of section 922(g)(1) as applied to him have been resolved adversely to his

---

[3]The PSR states that "Mr. Kuban unlawfully possessed two handguns on July 1, 1994. He used the Browning 9mm automatic to threaten the life of 16-year-old Kenan Ozen on that date. He was subsequently charged with Aggravated Assault with a Deadly Weapon in state district court, as well as Felon in Possession of a Firearm in violation of Texas state felony statutes. Consequently, this four-level adjustment is applicable."

contentions by our recent decision in *United States v. Rawls*, 85 F.3d 240 (5th Cir. 1996), which is binding on this panel.[4] *See also United States v. Segeada*, No. 95-40430 (5th Cir. Nov. 30, 1995)(unpublished)(upholding constitutionality of section 922(g)(1)). We accordingly reject this claim of error.

II. Application of the Sentencing Guidelines

We review *de novo* the district court's "interpretation of the requirements" of the sentencing guidelines. *United States v. Lara-Velasquez*, 919 F.2d 946, 953 (5th Cir. 1990). However, where the district court has correctly interpreted the relevant guideline provisions, we review the district court's application of the guidelines to the particular facts and circumstances of the case before it for abuse of discretion. *See United States v. Koon*, Nos. 94-1664, 94-8842, 1996 WL 315800 (June 13, 1996).

A. "Unusually Vulnerable Victim" Enhancement

The PSR recommended a two-level increase to Kuban's base offense level because Kuban knew or should have known that Ozen was "unusually vulnerable due to age, physical or mental condition, or that [Ozen] was otherwise particularly susceptible to the criminal considering defense counsel's arguments on this point, the district court concluded that Ozen was unusually vulnerable because of his age——"unusually vulnerable, because he's being faced by a fellow who is, perhaps, bigger, certainly older, more experienced, more

---

[4]As indicating by the concurring opinion in *Rawls* (joined in by all judges on that panel), were the matter *res nova* a powerful argument could be made for a contrary result; however, this inferior federal court must regard *Scarborough v. United States*, 97 S.Ct. 1963 (1977) as barring the way.

5

knowledgeable, more mature, supposedly, as to what he might be able to do to him or with him."

Kuban challenges this adjustment on two grounds: First, Kuban contends that the offense of conviction, felon in possession of a firearm, is a victimless crime; second, Kuban argues that, even assuming *arguendo* that there could be a victim of his offense of conviction, Ozen was not "unusually vulnerable" within the meaning of section 3A1.1.

Reviewing Kuban's first contention *de novo*, we hold that the district court did not err by characterizing Ozen as a "victim" of Kuban's conduct. In *United States v. Roberson*, 872 F.2d 597 (5th Cir.), *cert. denied,* 110 S.Ct. 175 (1989), this Court held that, in the present context, "[T]he [Sentencing] Commission has chosen not to require a nexus between the offense of conviction and the victim." *Id.* at 608. This Court reached this conclusion after observing that the commentary to section 3A1.1 did not require the vulnerable victim to be a victim of the offense of conviction: "[W]hen the Commission has wished to require a link between the offense of conviction and a factor the court could consider in sentencing, it has expressly included that requirement in the Guidelines." *Id.* At the time that this Court decided *Roberson*, the commentary to section 3A1.1 explained that the vulnerable victim enhancement "applie[d] to any offense where the victim's vulnerability *played any part* in the defendant's decision to commit the offense." *Id.* Based on this language, this Court held in *Roberson* that the (deceased) individual whose credit card had been

6

used by the defendant *after* the card owner's death in order to commit the charged "credit card fraud"—the offense of conviction—was a "victim" under section 3A1.1, particularly in that the decedent "certainly suffered indignity in having his corpse abused and his good name brought into this whole sordid affair." *Id.* at 609.[5] Within this analytical framework, Ozen must be viewed as a "victim" of Kuban's conduct, as well. We are bound by *Roberson.*[6]

---

[5]This Court also noted in *Roberson* that the commentary to U.S.S.G. § 1B1.3, which addresses "relevant conduct", clarified that "conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable Guideline Sentencing range." *Roberson*, at 608-609.

[6]In so holding, we recognize that the relevant commentary to section 3A1.1 has been amended since our decision in *Roberson*. The commentary now states: "This adjustment applies to offenses where an unusually vulnerable victim is made a target of criminal activity by the defendant." U.S.S.G. § 3A1.1, comment. (n.1) (effective November 1, 1989). This Court has not considered the impact of this amendment on our decision in *Roberson*. However, there appears to be little in the language of this amendment that would justify the conclusion that *Roberson* is no longer binding. Furthermore, the Supreme Court opinion advanced by Kuban, *Hughey v. United States*, 110 S.Ct. 1979 (1990), is clearly distinguishable. In *Hughey*, the Court did conclude that the class of "victims" at issue in that case would be limited to victims of the offense of conviction. *Id.* at 1982-83. In reaching this conclusion, however, the Court was clearly addressing *only* the restitution provisions of the Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3579-3580. After considering the statutory language at issue and the ordinary meaning of the word "restitution", the Court held that "restitution as authorized by the statute is intended to compensate victims only for losses caused by the conduct underlying the offense of conviction." *Id.* at 1982. Kuban's argument in the present case draws no really significant, direct support from this holding. *Hughey* is simply too far removed from the present issue to justify the conclusion that this panel is no longer bound by *Roberson*. In sum, this panel is simply not free to reexamine *Roberson.*

7

Next, Kuban contends that, even if Ozen were a "victim" within the meaning of section 3A1.1, the district court erred in finding that Ozen was an "unusually vulnerable" victim. "The determination of 'vulnerability is a complex fact dependent upon a number of characteristics which a trial court could not possibly articulate completely' . . ." *United States v. Scurlock*, 52 F.3d 531, 542 (5th Cir. 1995)(footnote omitted). "Accordingly, we give the finding of vulnerability due deference." *United States v. Box*, 50 F.3d 345, 358-59 (5th Cir.), *cert. denied*, 116 S.Ct. 309 (1995). *See also Koon v. United States*, Nos. 94-1664, 94-8842, 1996 WL 315800 at *11 (June 13, 1996)(recognizing the statutory requirement "that courts of appeals 'give due deference to the district court's application of the guidelines to the facts'").[7] Additionally, we accord due deference to the finding of "what the defendant knew or should have known in this respect." *United States v. Brown*, 7 F.3d 1155, 1160 (5th Cir. 1993). Finally, we must determine whether the district court's finding of "unusual vulnerab[ility]" was plausible in light of the record as a whole. *See Scurlock*, at 542.

In the instant case, the district court concluded that Ozen was unusually vulnerable because of his age——"unusually vulnerable, because he's being faced by a fellow who is, perhaps, bigger, certainly older, more experienced, more knowledgeable, more mature,

---

[7]The statutory requirement at issue is set forward in 18 U.S.C. § 3742. Before the sentencing guidelines system was implemented, a federal criminal sentence within the statutory limits was essentially not reviewable on appeal. *Id.* Section 3742 was enacted in order to create limited appellate jurisdiction to review federal sentences. *Id.* In the above quotation, the Court was citing the 1988 amendment to section 3742. *Id.*

supposedly, as to what he might be able to do to him or with him." Additionally, it was brought to the district court's attention that Ozen had previously been employed by Kuban, adding yet another nuance to the relationship between these two individuals. Although the issue is indeed a close one, and the concept of vulnerability has arguably been taken virtually to its outer limits, nevertheless, in light of all the foregoing circumstances and the deference due the district court, we ultimately conclude that its application of section 3A1.1 must stand.

B.    Enhancement for Use of Firearm to Commit Felony

Finally, the district court also applied a four-level increase to Kuban's base offense level because "the defendant used or possessed [a] firearm or ammunition in connection with another felony offense . . . ." U.S.S.G. § 2K2.1(b)(5). In this case, the "[other] felony offense" was aggravated assault with a deadly weapon, violative of Texas Penal Code §§ 22.01(a)(2), § 22.02(a)(2). The parties correctly agree that the second state offense with which Kuban was charged, felon in possession of a firearm, violative of Texas Penal Code § 46.04(a)(1), cannot constitute the "[other] felony offense" underlying the district court's [section 2K2.1(b)(5)] four-level enhancement. However, it appears that the district court relied on the state aggravated assault with a deadly weapon charge to increase Kuban's base

offense level pursuant to section 2K2.1(b)(5)[8], and, contrary to Kuban's protestations, the district court did not err in doing so.

At sentencing, defense counsel objected to the PSR's recommendation of section 2K2.1(b)(5) enhancement, arguing principally that Kuban was being "doubly punished" for his possession of firearms.  Counsel further contended that "the aggravated assault [] in the state court would not have been an aggravated assault but for the use of the firearm."  However, when the district court asked defense counsel whether someone could "be charged with aggravated assault for some other reason other than the use of a firearm?", counsel correctly responded, "Yes, Your Honor."[9]  It is clear that there is no merit to Kuban's assertion that he was "doubly punished" for *possessing* firearms.  This argument misses the critical requirement of section 22.02(a)(2) that the defendant must *use* or *exhibit* a deadly weapon in order for

---

[8]The transcript of Kuban's September 14, 1995, sentencing hearing clearly reflects that defense counsel recognized that the "[other] felony offense" in question was the state charge of aggravated assault with a deadly weapon, and that the government and the district court shared this view.

[9]Texas Penal Code § 22.02, entitled "Aggravated Assault", states:

> "(a) A person commits an offense if the person commits assault as defined in Section 22.01 and the person:
>
> > . . . (2) *uses or exhibits* a deadly weapon during the commission of the assault." (emphasis added).

In relevant part, section 22.01, entitled "Assault", states:

> "(a) A person commits an offense if the person:
>
> > . . . (2) intentionally or knowingly threatens another with imminent bodily injury . . ."

10

an assault to rise to the level of an aggravated assault. A defendant's mere *possession* of a deadly weapon during the commission of an assault would not of itself implicate section 22.02. It is indisputable that Kuban committed his assault on Ozen *by* using and/or exhibiting—not merely contemporaneously possessing (as by carrying concealed in his pocket)—the deadly weapon: the section 22.02 violation *was* Kuban's pointing the weapon at Ozen's head at close range and cocking it, while demanding information from Ozen. Therefore, the district court properly increased Kuban's base offense level pursuant to section 2K2.1(b)(5) in the present case.[10]

## Conclusion

For the foregoing reasons, Kuban's conviction and sentence are AFFIRMED.


DeMOSS, Circuit Judge, dissenting in part.


I am unable to concur with the summary disposition which the majority makes as to Kuban's challenge to the constitutionality of § 922(g)(1) as applied to him, and write to respectfully register my reasons for this partial dissent.

---

[10]We also note that, by its own terms, section 2K2.1(b)(5) mandates enhancement when the requisite conditions for application of that section have been met. The requisite conditions having been met in the instant case—"the defendant used or possessed [a] firearm or ammunition in connection with another felony offense"—the district court had no discretion regarding application of this enhancement.

11

First, I do not regard the opinion in **Scarborough v. United States**, 97 S. Ct. 1963 (1977), as "barring the way" as the majority notes in footnote 4 above.  In **Scarborough** the Supreme Court interpreted the language of 18 U.S.C. App. § 1202(a)(1) which fixed the punishments for a convicted felon "who receives, possesses or transports in commerce or affecting commerce ... any firearm."  The writ of certiorari in **Scarborough** was limited to the question of whether a conviction under 18 U.S.C. App. § 1202(a) "is sustainable merely upon a showing that the possessed firearm has previously at any time however remote traveled in interstate commerce." Concluding that the legislative history of § 1202(a) gave no indication "that Congress intended to require any more than the minimal nexus that the firearm has been, at some time, in interstate commerce", the Supreme Court affirmed the conviction, but without any real analysis of whether the "minimal nexus" was constitutionally sufficient.

In 1986, § 1202(a), along with the various congressional findings which the Court cited in **Scarborough** as supporting the "minimal nexus" conclusion, was repealed by Congress.[11]  The present statute under which Kuban was indicted reads in relevant portions as follows:

> (g)  It shall be unlawful for any person --

---

[11]     Firearm Owners' Protection Act of 1986, Public Law 99-308; H.R. REP. NO. 495, 99th Cong. 2d Sess., § 4 (1986) ("Title VII of the Omnibus Crime Control and Safe Streets Act of 1968 [which enacted § 1202(a)] is repealed.").

12

> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
>
> . . . .
>
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g).

Applying a common sense reading to § 922(g) and reading the words and punctuation in the manner which an average citizen would read it, this subsection creates three separate and distinct criminal acts as follows:

A.  Element A:   It shall be unlawful for [a convicted felon] to ship or transport in interstate or foreign commerce any firearm or ammunition;

B.  Element B:   It shall be unlawful for [a convicted felon] to possess in or affecting commerce any firearm or ammunition; or

C.  Element C:   It shall be unlawful for [a convicted felon] to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

It seems critically important that we note the clear differences between the current statute (§ 922(g)(1)) under which Kuban was indicted and the old statute (18 U.S.C. App. § 1202(a)(1)) which was construed in **Scarborough**. First, as the Supreme Court has held, under the old statute the phrase "in commerce or affecting commerce" applied to each of the three verbs:

13

"receives, possesses or transports".[12]  Under the current statute, however, the phrase "in or affecting commerce" modifies only the verb "possess" in Element B of the current statute.  Next, it is apparent that the current statute is structurally different from the statute construed in **Scarborough** because the phrase "which has been shipped or transported in interstate or foreign commerce" modifies only the "firearm or ammunition" which was "received" by a convicted felon in Element C.

It seems important to note that the current statute (§ 922(g)(1)) does not use any words or phrases which refer to or are a derivative of the phrase used in the question certified on writ of certiorari in **Scarborough**: "that the possessed firearm has previously at any time however remote traveled in interstate commerce."  (Emphasis added.)  Nor are there any words or phrases in the current statute referring to the holding of the Supreme Court in **Scarborough** that the "firearm had been, at some time, in interstate commerce".  In putting together § 922(g), Congress could easily have inserted the phrase "at any time" after the words "shipped or transported" in Element C as it did in § 922(k), and the absence of any phrase as to the remoteness in time of the shipment or transportation in interstate commerce leads me to the conclusion that Congress chose not to rely upon the "minimal nexus" of **Scarborough**, but rather crafted § 922(g) to have clear and unambiguous connections with interstate commerce.

---

[12]  **United States v. Bass**, 404 U.S. 336, 92 S. Ct. 515, 30 L.Ed.2d 488 (1971).

14

The second reasons why I would not consider that **Scarborough** stands in the way of a thorough examination of the constitutionality of § 922(g)(1) in this case is that the precise holding in **Scarborough** is in fundamental and irreconcilable conflict with the rationale of the United States Supreme Court in **United States v. Lopez**, 115 S. Ct. 1624 (1995).[13]  Obviously the precise holding in **Lopez** which declared § 922(q) unconstitutional does not automatically determine the issue as to § 922(g)(1).  But **Lopez** has to be read as more than a case determining the constitutionality of one of the subsections of § 922.  Rather, **Lopez** is a fundamental and landmark restatement and redefinition of the powers of Congress under the Commerce Clause.  Whatever may have been the ambiguities and lack of clarity under prior case law as to whether an activity must "affect" or "substantially affect" interstate commerce in order to be within Congress' power to regulate it under the Commerce Clause, the Court stated in **Lopez** that "consistent with the great weight of our case law ... the proper test requires an analysis of whether the regulated activities substantially affects interstate commerce."  **Id**. at 1630.  In my view, this conclusion means that in regard to Element B of § 922(g)(1) the possession by

_____

[13]     I, of course, am mindful of the Supreme Court's warning in **Rodriguezde Quijas v. Shearson/American Express, Inc.**, 490 U.S. 477, 484 (1989), that "[i]f a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." I, however, do not believe that **Scarborough** directly controls because (1) the statute at issue in **Scarborough** has been repealed and (2) the **Scarborough** court did not address the constitutional issue.  Thus, **Shearson/American Express** does not apply.

15

a convicted felon of a firearm must now "substantially affect interstate commerce". Consequently, the "minimal nexus" of **Scarborough** can no longer be deemed sufficient under the **Lopez** requirement of substantially affecting interstate commerce. The mere fact that a felon possesses a firearm which was transported in interstate commerce years before the current possession cannot rationally be determined to have a "substantial impact on interstate commerce" as of the time of current possession.

Finally, I would proceed to reach the constitutionality of § 922(g)(1) in this case because the facts are so compellingly local in nature. The events which ultimately resulted in this federal indictment started out as a quarrel between a father (Kuban) and his 14-year-old daughter which deteriorated into a "family disturbance" (so characterized in the factual stipulation filed by the United States Attorney and the Presentence Report prepared by the Probation Department). The events took place in the residential areas of a small town in Travis County, Texas. When the witnesses and victims felt the need of police assistance, they called the sheriff of Travis County and the police department of the local town. They did not call the FBI, the DEA, the ATF or any other federal law enforcement agency. Ultimately, the local police officers found and arrested Kuban and took him into state custody on various state criminal charges, including the state charge of being a felon in possession of a gun. All of these events took place on July 1, 1994. Four months later, the United States Bureau of Alcohol, Tobacco and Firearms initiated a federal investigation

16

regarding the weapons and Kuban was named as a defendant in a one-count federal indictment charging him with being a felon in possession of a firearm. At the time of the issuance of this federal indictment, Kuban was still in state custody and the United States Attorney issued an application for writ of habeas corpus ad prosequendum in order to bring Kuban from custody in the Travis County jail to arraignment on the federal charges.

The federal indictment charges that Kuban "a person who had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm that had been shipped and transported in interstate commerce and affecting commerce, specifically a Browning 9 mm pistol and a Ruger Red Hawk .41 Magnum caliber revolver, in violation of Title 18, United States Code, § 922(g)(1)." The language of the indictment is a hodgepodge cut-and-paste mixing of the elements of criminal conduct under § 922(g)(1). The prohibited verb "possess" is out of Element B; the phrase "that had been shipped and transported in interstate commerce" is out of Element C, but the word "had" is substituted for the word "has", a not insignificant change of the tenses of the verb. The phrase "and affecting commerce" is out of Element B and as placed in the indictment language it is impossible to determine whether this phrase modifies "possess" or "shipped and transported." The indictment uses only the prohibited verb "possess" and does not mention "receives." The indictment does not contain any allegation about the conduct "substantially" affecting commerce.

17

In the factual basis filed by the United States Attorney the only grounds upon which the government offered to prove that the conduct involved had anything to do with interstate commerce was the tender of proof that the firearms involved "had previously traveled in interstate commerce as the Browning 9 mm semi-automatic pistol was manufactured in Belgium and the Ruger Red Hawk .41 Magnum revolver was manufactured in Connecticut." The fact that a firearm was manufactured originally in Belgium or Connecticut and is later found in possession of a felon in Texas cannot constitute proof beyond a reasonable doubt that such firearm was ever "shipped or transported in interstate commerce" for it is just as plausible that the firearm was purchased by its original owner where it was manufactured and brought or carried to Texas by such original owner as part of his personal property and not as part of any interstate shipment. The government's theory might hold water if the statute prohibited a felon from possessing a firearm in any state different from the state where the firearm was manufactured; but that's not what § 922(g)(1) prohibits. Furthermore, there was no offer of any proof by the government that Kuban's possession of the firearm took place in a channel of commerce or that it involved any facility of interstate commerce. Likewise, there was no offer of proof of any kind by the government that Kuban's possession of the weapons on July 1, 1994, had any effect whatsoever, much less a substantial effect, on interstate commerce.

If the government is correct that all it takes to get a conviction under § 922(g)(1) is to show that a felon possessed a

18

firearm which at some time in past history was shipped in interstate commerce, then all of the other elements of § 922(g)(1) are rendered surplusage and meaningless. **Lopez** reiterates the warning issued earlier by the Supreme Court in **Jones & Laughlin Steel**:

> [T]he scope of [the interstate commerce] power must be considered in the light of our dual system of government and may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local and create a completely centralized government.

**NLRB v. Jones & Laughlin Steel Corp.**, 301 U.S. 1, 31 (1937). I would hold that the "affecting commerce" mantra of **Scarborough** has been changed by **Lopez**'s requirement of a substantial affect on commerce and **Scarborough**'s "minimal nexus" can no longer satisfy **Lopez**'s requirement that the regulated activity must exert "a substantial economic affect on interstate commerce."

For these reasons I would address the constitutional issue and hold that under the facts of this case there is no substantial effect on interstate commerce to satisfy the indictment under § 922(g)(1).

19